UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN GBUR, | : |
| Plaintiff | : CIVIL ACTION NO. 1:21-cv-863 |
| v. | : (JUDGE MANNION) |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY | : |
| Defendant | : |

## MEMORANDUM

The court reviews a decision of the Acting Commissioner of the Social Security Administration. Plaintiff John Gbur appeals the Commissioner's denial of his application for Social Security disability benefits.

I.     BACKGROUND

Plaintiff applied for disability benefits under Titles II and XVIII of the Social Security Act, averring that he became unable to work in June 2016, when he was 49 years old. (Doc. 14-5 at 11–12; Tr. 176–77). He claimed to be disabled because of bipolar disorder, depression, high blood pressure, high cholesterol, sleep apnea, acid reflux disease, edema, and diabetes.

(Doc. 14-3 at 3; Tr. 90). An SSA disability adjudicator determined that Plaintiff was not disabled. (Doc. 14-3 at 12; Tr. 99).

Plaintiff disagreed with this determination and requested a hearing before an Administrative Law Judge (ALJ). (Doc. 14-4 at 12–13; Tr. 112–13). A hearing was held, (Doc. 14-2 at 47–89; Tr. 46–88), and the presiding ALJ in a written decision determined that Plaintiff was not disabled. (Doc. 14-2 at 41). The Social Security Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making that decision the final decision of the Commissioner. *See* 20 C.F.R. §404.972. (Doc. 14-2 at 16). Plaintiff then initiated this action under 42 U.S.C. §405(g), which allows for judicial review of a final decision of the Commissioner. (Doc. 1).

## II.   LEGAL STANDARD

For purposes of Social Security benefits, a disability means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§416(i)(1), 423(d)(1); 20 C.F.R. §414.1505. Congress has directed the Commissioner "to make findings of fact, and decisions as to the rights of any individual applying" for Social

Security benefits. 42 U.S.C. §405(b)(1). An unfavorable decision must contain "a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." *Id.*

On review, the Commissioner's factual findings are conclusive "if supported by substantial evidence." 42 U.S.C. §405(g). The district court must therefore uphold the decision unless "it is not supported by substantial evidence in the record." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is 'more than a mere scintilla'; "[i]t means … 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1154 (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S 197, 229 (1938)).

### III. DISCUSSION

Plaintiff raises five challenges to the Commissioner's decision. He argues that the ALJ erred in her findings regarding (A) Plaintiff's residual functioning capacity, (B) Plaintiff's medication compliance, (C) Plaintiff's

mental illness, (D) Plaintiff's physical impairments, and (E) the consistency of Plaintiff's testimony with the evidence.

### A. Plaintiff's Residual Functioning Capacity

The Social Security Administration has established a five-step sequential evaluation process that is used to determine whether an applicant is disabled. 20 C.F.R. §404.1520. Between steps three and four, an applicant's residual functioning capacity (RFC) is assessed. §404.1520(a)(4). The RFC, which is assessed based on all the relevant medical and other evidence, is the most the applicant can do in a work setting despite his or her limitations. §404.1545(a)(1), (3).

Plaintiff asserts that the ALJ's RFC determination was not supported by substantial evidence. (Doc. 21 at 16–17). He contends that the ALJ failed to explain why (1) she found that Plaintiff had a mild limitation in interacting with others but at the same time found Dr. Karen Plowman, Psy.D.'s opinion that Plaintiff had moderate functional limitations supported by the record and why (2) she limited Plaintiff to occasional interaction with the public but did not limit Plaintiff in interacting with coworkers or supervisors. (Id).

#### 1. Limitation in interacting with others

Dr. Plowman, the state agency psychological consultant, opined that Plaintiff had moderate limitations in interacting with others and adapting or

managing himself. (Doc. 14-3 at 7–8; Tr. 94–95). The ALJ found this opinion persuasive "to the extent that it is suggestive that mental health symptoms pose no more than moderate functional limitations," but found that Plaintiff had only mild limitations in interacting with others. (Doc. 14-2 at 39).

The ALJ based her finding of mild limitation in interacting with others on evidence that Plaintiff drives, (Doc. 14-6 at 20; Tr. 210), goes out to eat, (Doc. 14-2 at 55), visits with his parents and family, (Doc. 14-6 at 21; Tr. 211), and shops. (Id. at 20; Tr. 210). The ALJ noted that while Plaintiff appeared unkempt and malodorous at some appointments, he was cooperative and maintained fair eye contact. (Doc. 14-2 at 32; Doc. 14-7 at 459, 469; Tr. 721, 731). At an April 2018 examination, he appeared disheveled but fairly groomed, his demeanor and responsiveness to questions was cooperative, and his manner of relating, social skills, and overall presentation were adequate. (Doc. 14-7 at 60; Tr. 322). He attended his daughter's graduation from vocational school, (Doc. 14-7 at 192; Tr. 454), participated in a joint birthday celebration for him and his father, (Doc. 14-7 at 218; Tr. 480), and vacationed with his parents at their cabin. (Doc. 14-7 at 251; Tr. 513). The ALJ further found no indication that Plaintiff was unable to leave his house or had been charged due to dysfunctional behavior toward others. (Doc. 14-2 at 32). In addition, Dr. Plowman observed that Plaintiff

"denied having any problems with social interactions" and that "[t]here is no evidence to suggest that [Plaintiff] is limited in social interactions." (Doc. 14-3 at 9; Tr. 96).

The court does not find the ALJ's evaluation of Dr. Plowman's opinion regarding Plaintiff's moderate functional limitations inconsistent with her finding that Plaintiff had mild limitations in interacting with others. Although the same evidence may be relevant for each, those are different types of limitations, and the ALJ merely agreed that Plaintiff's mental health symptoms posed "*no more than* moderate functional limitations." Moreover, the ALJ explained the reasons for each finding, and the court concludes that these decisions are supported by substantial evidence.

### 2. Limitation in interacting with coworkers

The ALJ found that Plaintiff has the residual functioning capacity to perform a full range of work at all exertional levels, but with several nonexertional limitations, including that Plaintiff retains the mental capacity to tolerate occasional interaction with the public. (Doc. 14-2 at 34).[1]

---

[1] The ALJ used this RFC in her hypothetical question to vocational expert LaShun Alexander, who testified that there would be work in the national economy for a hypothetical person with this RFC. (Doc. 14-2 at 79). Plaintiff therefore posits that the ALJ's hypothetical questions were not supported by substantial evidence. (Doc. 21 at 16).

Dr. Plowman opined that Plaintiff's ability to interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes was moderately limited. (Doc. 14-3 at 10; Tr. 97). As discussed above (*see supra* Section III.A.1), the ALJ instead found that Plaintiff had only mild limitations in interacting with others. She accordingly limited Plaintiff's RFC to occasional interaction with the public. (Doc. 14-2 at 34). Plaintiff suggests that she should also have limited Plaintiff's RFC as to interaction with coworkers or supervisors, and that "even a mild limitation in interacting with supervisors might well preclude maintaining employment if there was any inappropriate interaction with them." (Doc. 21 at 17).

A review of the ALJ's basis for her evaluation of Plaintiff's interaction limitations convinces the court that her findings are supported by substantial evidence. For example, although Plaintiff had only occasional interaction with the general public, (see Doc. 14-6 at 20–22; Tr. 210–212), he regularly reported to marital and individual therapy, (Ex. 7F, Doc. 14-7 at 79–262; Tr. 341–524), during which he was described as "cooperative," (Doc. 14-7 at 60, 459, 491, 495, 499; Tr. 322, 721, 753, 757, 761), and participated in group therapy, in which he was reported to be "engaged," (Doc. 14-7 at 504, 507,

510, 515, 539, 553; Tr. 766, 769, 772, 777, 801, 815) "pleasant," (Doc. 14-7 at 519, 527, 531; Tr. 781, 789, 793) and "acclimating well to the group process." (Id.). The court finds that evidence such as this, which demonstrates Plaintiff's ability to interact with those he encounters regularly, as well as the other evidence relied on by the ALJ, is sufficient to support her findings regarding Plaintiff's RFC as it relates to interacting with coworkers and supervisors.

**B. Plaintiff's compliance with medication prescriptions**

Plaintiff next contends that the ALJ "erred in misstating the facts in the record." (Doc. 21 at 18). He asserts, without citing the record, that "[t]he ALJ implied the Plaintiff was untruthful when he reported compliance with taking medication even when he stopped taking it in 2018." (Id. at 17). He cites his own testimony that he was compliant with taking his medications in 2017. (Doc. 14-2 at 68; Tr. 67).

The ALJ noted that Plaintiff received emergency treatment in December 2018 after not having taken his medication for the previous six weeks to three months. (Doc. 14-2 at 31, 37; Doc. 14-7 at 294 ("He admits that he has not been taking his medication for about 1 month."), 302 ("Patient reports self discontinuation of medication approximately 6 weeks ago."), 310 ("Admits significant nonadherence with medications."); Tr. 556, 564, 572).

She also discussed Plaintiff's report that he does not need reminders to take his medicine, (Doc. 14-2 at 31–32; Doc. 14-6 at 19; Tr. 209), and referenced Plaintiff's reports to therapists during 2017 that he benefitted from changes to his medication. (Doc. 14-2 at 35–36). As highlighted by the ALJ's decision, Plaintiff also reported that he had become increasingly depressed after discontinuing his medications in late 2018, and that his symptoms had improved in January 2019 since resuming medication. (Doc. 14-2 at 37; Doc. 14-7 at 443, 458; Tr. 705, 720).

With regard to the relationship between Plaintiff's mental health and his medication compliance, the ALJ found that:

> [I]t appears that mental health symptoms that the claimant experienced primarily in conjunction with his separation and divorce from his wife were treated with some improvement with medication management with a psychiatric provider and therapy. Further, it appears that increased symptoms occurred when the claimant stopped taking medications prescribed to him by his psychiatric provider from six (6) weeks to three (3) months despite reporting to that provider medication compliance, which ultimately resulted in his partial hospitalization program participation, through which the claimant has reported experiencing improvement. The occurrence of mental health symptoms in conjunction with situational stressors and medication noncompliance suggests that the occurrence of symptoms primarily may be due to those considerations as opposed to mental illness. While notes of treatment reflect that claimant appeared unkempt and malodorous at times, it appears that such appearance primarily occurred after the claimant had been hospitalized for diabetic ketoacidosis and had discontinued his mental health medications while adjusting to home life and medications following that hospitalization …. While there is no

question that the claimant experienced mental health symptoms in conjunction with significant situational stressors and medication noncompliance, these symptoms do not rise to a disabling level of impairment in light of the record detailed above.

(Doc. 14-2 at 37–38).

The ALJ's discussions of medication noncompliance are cabined to Plaintiff's reported self-discontinuation of his medications in late 2018, which is evidenced in the record. (*See* Doc. 14-7 at 294, 302, 310, 438, 443, 465, 483; Doc. 14-2 at 72; Tr. 556, 564, 572, 700, 705, 727, 745). The court finds no implication by the ALJ of Plaintiff's untruthfulness. The ALJ's findings regarding Plaintiff's medication noncompliance are supported by substantial evidence.

**C. Plaintiff's mental illness**

According to Plaintiff, the ALJ erroneously suggested that he did not have a mental illness. (Doc. 21 at 18). He cites medical diagnoses of bipolar disorder and anxiety. (Id. at 19; Doc. 14-7 at 62, 147, 461, 489; Tr. 324, 409, 723, 751).

The ALJ found that Plaintiff "has the following severe impairments: bipolar disorder and anxiety." (Doc. 14-2 at 30). Thus, contrary to Plaintiff's assertion, the ALJ did not "reject" the medical opinions of Drs. Plowman, Olivetti, and Guzman, and Counselor Oliver. (Doc. 21 at 19).

After an ALJ finds that an applicant's mental impairments are severe, she must "then determine if it meets or is equivalent in severity to a listed mental disorder." 20 C.F.R. §404.1520a(d)(3). This determination is made "by comparing the medical findings about [the applicant's] impairments and the rating of the degree of functional limitations to the criteria of the appropriate listed mental disorder." *Id.* §404.1520a(d)(2).[2] As to the degree

---

[2] According to the Social Security Administration regulations' listing of impairments, the criteria for bipolar disorder or anxiety disorder are satisfied by findings that fulfill paragraphs "A and B, or A and C." 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§12.04 (Depressive, bipolar, and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders)). For both §12.04 and §12.06, paragraphs B and C require the following:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>     1. Understand, remember, or apply information.
>     2. Interact with others.
>     3. Concentrate, persist, or maintain pace.
>     4. Adapt or manage oneself.
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>     1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder.
>     2. Marginal adjustment, that is, you have the minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. Pt. 404, Subpt. P., App. 1, §§12.04 ¶¶B–C, 12.06 ¶B–C (internal citations omitted).

of functional limitations, the ALJ here found that Plaintiff had mild limitations in (1) understanding, remembering, or applying information, and (2) interacting with others; and moderate limitations in (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. (Doc. 14-2 at 32–33; *see* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§12.04 (Depressive, bipolar and related disorders), 12.06 (Anxiety and obsessive-compulsive disorders)). Plaintiff's mental impairments thus did not cause at least two "marked limitations" or one "extreme" limitation, as required by paragraph B of Appendix 1's criteria for bipolar and anxiety disorders. (Doc. 14-2 at 33; *see* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§12.04 ¶B, 12.06 ¶B). The ALJ also found that paragraph C's requirements were not met, because Plaintiff "has minimal capacity to adapt to changes in his environment or to demands that are not already a party of his daily life." (Doc. 14-2 at 34; *see* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§12.04 ¶C, 12.06 ¶C).

Finding that Plaintiff's mental impairments did not meet the criteria for the listed mental disorders, the ALJ then assessed Plaintiff's RFC. *See* 20 C.F.R. §404.1520a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functioning capacity."). She found that Plaintiff's mental health impairments "do not rise to a disabling level of

impairment in light of" his lack of inpatient psychiatric hospitalization or emergency treatment for uncontrolled mental health symptoms, the fact that his severe symptoms occurred after he stopped taking medications and in conjunction with situational stressors, her observation that other factors, such as his contentment "with how things are" and primary activity of reading books, (Doc. 14-7 at 84, 88, 240, 245, 255–56, 481, 483; Tr. 346, 350, 502, 507, 517–18, 743, 745) likely contribute to Plaintiff's failure to become more active, and his levels of concentration, attention, and memory. (Doc. 14-2 at 38; Doc. 14-7 at 459, 490, 495–96, 499; Tr. 721, 752, 757–58, 761). The court concludes that the ALJ's findings as to mental impairments were properly set out and supported by substantial evidence.

Relying on *Kilgore v. Kijakazi*, 2021 WL 5759034 (M.D. Pa. 2021), Plaintiff posits that "where there is medical opinion evidence supporting disability, the ALJ cannot reject that evidence without support from some other medical evidence." (Doc. 21 at 19). As discussed above, the ALJ did not "reject" medical evidence, and she did base her findings on medical, as well as non-medical, evidence. In *Kilgore*, where the vocational expert's testimony was inconsistent regarding the ability of the plaintiff—who required the use of a cane—to perform jobs requiring bilateral manual dexterity, the court recognized that such an inconsistency, when unaddressed by the ALJ,

required remand. 2021 WL 5759034, at *8. No such inconsistency is present here. Rather, the ALJ concurred with the medical opinions in finding that Plaintiff had bipolar disorder and anxiety; she simply found that those impairments did not meet the criteria of the mental disorders listed by SSA regulations nor rendered Plaintiff disabled, findings which she thoroughly discussed. (Doc. 14-2 at 30, 32–34, 37).

### D. Plaintiff's physical impairments

Plaintiff next contends that "the ALJ erred in failing to find diabetes as a severe impairment." (Doc. 21 at 20).

Dr. Wadicar Nugent found that Plaintiff had non-severe diabetes mellitus. (Doc. 14-3 at 7; Tr. 94). Dr. Paul E. Vassil also diagnosed Plaintiff with "uncontrolled type 2 diabetes mellitus, without long-term current use of insulin" in August 2017. (Doc. 14-7 at 44; Tr. 306). Dr. Vassil in the same visit also noted with regard to Plaintiff's condition that:

> His disease course has been stable. There are no hypoglycemic symptoms. Pertinent negatives for hypoglycemia include no confusion, dizziness, headaches, nervousness/anxiousness, pallor or seizures. There are no diabetic associated symptoms. Pertinent negatives for diabetes include no chest pain and no fatigue. There are no hypoglycemic complications. Symptoms are stable. There are no diabetic complications.

(Doc. 14-7 at 45; Tr. 307). Plaintiff further points out that at times his blood sugar levels were recorded to be high, (Doc. 14-7 at 52; Tr. 314; Doc. 21 at 19), which is a defining characteristic of type 2 diabetes.[3]

The ALJ found that Plaintiff's diabetes was not a severe impairment. (Doc. 14-2 at 31). This finding was based on the lack of documentation of significant treatment for diabetes prior to December 2018 and the general responsiveness of Plaintiff's diabetic symptoms to treatment. (Id.). The ALJ also cited Plaintiff's hearing testimony that his diabetes was "good." (Doc. 14-2 at 77).

The second step of the five-step disability evaluation involves a consideration of the medical severity of an applicant's impairments. 20 C.F.R. §404.1520(a)(4)(ii). A "severe impairment" is one that "significantly limits [the applicant's] physical or mental ability to do basic work activities." *Id.* §404.1520(c); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have 'no more than a minimal effect on an individual's ability to work.'" *Newell*, 347 F.3d at 546 (citing SSR 85-28, 1985

---

[3] *Type 2 Diabetes*, Nat'l Inst. Diabetes & Digestive & Kidney Diseases, U.S. Dep't Health & Hum. Servs., https://www.niddk.nih.gov/health-information/diabetes/overview/what-is-diabetes/type-2-diabetes.

WL 56856). Therefore, evidence which presents more than a "slight abnormality" satisfies step two's requirement of a "severe impairment." *Newell*, 347 F.3d at 546. But a diagnosis of diabetes does not automatically establish an abnormality which has more than a minimal effect on an individual's ability to work. *See, e.g.*, *Bryan v. Comm'r of Soc. Sec.*, 383 Fed. Appx. 140, 146 (3d Cir. 2010); *Sassone v. Comm'r of Soc. Sec.*, 165 Fed. Appx. 954, 957 (3d Cir. 2006).

The evidence regarding Plaintiff's lack of significant treatment before December 2018, his responsiveness to treatment, and Dr. Vassil's observations regarding Plaintiff's stable symptoms and lack of complications convinces the court that the ALJ was justified in not finding more than a slight abnormality as to Plaintiff's diabetes diagnosis. In any event, the step-two inquiry serves as a "*de minimis* screening device to dispose of groundless claims." *Newell*, 347 F.3d at 546. The disability evaluation proceeds to the next step as long as one severe impairment is found. 20 C.F.R. §404.1520(a)(4)(ii)–(iii). An alleged error in an ALJ's evaluation does not require remand if it would not affect the outcome of the case. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Here, the ALJ found in Plaintiff's favor at step two. (Doc. 14-2 at 30). So, even if the ALJ had erred in this manner asserted by Plaintiff, such error was harmless. *See Salles v.*

*Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); *Rivera v. Comm'r Soc. Sec.*, 164 Fed. Appx. 260, 262 n.2 (3d Cir. 2006).

### E. Consistency of Plaintiff's statements with the evidence

Finally, Plaintiff argues that the ALJ "erred in finding the Plaintiff's statements not consistent with the evidence." (Doc. 21 at 20). He cites his testimony that depression impairs his focus, he has difficulty completing his tasks and concentrating, can only pay attention for ten minutes at a time, and does not like to leave his home, as well as his mother's testimony about his ability to care for himself. (Id.). He also cites the opinion of Dr. Jennifer Olivetti, who found that Plaintiff had marked impairment in his ability to interact with coworkers and respond to changes in work setting. (Doc. 14-3 at 9; Tr. 96). Dr. Karen Plowman regarded Dr. Olivetti's findings as an overestimate of Plaintiff's limitations, noting that Plaintiff "denied having any problems with social interactions and claims to have no difficulty with adapting to change," and that "[t]here is no evidence to suggest that [Plaintiff] is limited in social interactions or adaptation." (Doc. 14-3 at 9–11; Tr. 96–98).

The ALJ discussed the opinions of Drs. Olivetti and Plowman, and found that Plaintiff has mild limitation in interacting with others. (Doc. 14-2 at 39–40). Plaintiff suggests that the ALJ dismissed this evidence he cites (his testimony and Dr. Olivetti's findings) without contrary medical evidence.

(Doc. 21 at 20 (citing *Willliams v. Sullivan*, 970 F.2d 1178, 1184–85 (3d Cir. 1992) ("Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.")). But, as indicated above, Dr. Plowman's opinion contradicted this evidence. And as discussed *supra* Section III.A., the ALJ's findings regarding Plaintiff's limitation in interacting with others are supported by substantial evidence.

In this portion of his brief, Plaintiff again asserts that the ALJ should have accounted for a limitation in Plaintiff's interaction with supervisors and coworkers and in his ability to respond to usual work situations. (Doc. 21 at 21). As discussed *supra* in Section III.A.2, the court concludes that the ALJ's findings on this score are supported by substantial evidence.

## IV.   CONCLUSION

For the foregoing reasons, the court will deny Plaintiff's appeal. The decision of the Commissioner of Social Security will be affirmed. An appropriate order will follow.

*s/ Malachy E. Mannion*
MALACHY E. MANNION
United States District Judge

DATE: December 6, 2023
21-863-01